**U. Roland BENZ, Plaintiff,**

v.

**BULKFLEET MARINE CORPORATION and Seafarers' International Union, Defendants.**

**Civ. No. 87–0100–P.**

United States District Court,
D. Maine.

Dec. 18, 1987.

Michael Kaplan, John J. Flaherty, Preti, Flaherty, Beliveau & Pachios, Portland, Me., for plaintiff.

Audrey F. Feffer, Camp Springs, Md., Jonathan S.R. Beal, Topsham, Me., for Seafarer's Intern. Union.

Ralph I. Lancaster Jr., Scott T. Maker, Portland, Me., for Bulkfleet.

## MEMORANDUM OF DECISION AND ORDER ON PENDING MOTIONS

GENE CARTER, District Judge.

In this action, Plaintiff is suing Defendant Bulkfleet Marine Corporation ("Bulkfleet") for breach of contract and for slander. He is suing Defendant Seafarers' International Union ("the Union") under section 301 of the Labor Management Relations Act, 29 U.S.C. 185, for breach of the duty of fair representation as the result of its decision not to arbitrate Plaintiff's grievance with Bulkfleet.

Defendant Seafarers' has filed a motion to dismiss the complaint for want of personal jurisdiction. Although so labeled, the motion and accompanying memorandum actually raise two separate issues—personal jurisdiction and venue—for in addition to setting forth traditional arguments related to its contacts with the forum state, Defendant also argues that it does not meet the requirements of 29 U.S.C. § 185(c) and, therefore, is not subject to suit in this district.

Section 185(c), while labeled as a jurisdiction provision, has consistently been construed to be a venue statute. *See, e.g., Central Operating co. v. Utility Workers,* 491 F.2d 245, 250 n. 6 (4th Cir.1974); *Barefoot v. International Brotherhood of Teamsters,* 424 F.2d 1001 (10th Cir.1970); *Dixie Carriers v. National Maritime Union,* 35 F.R.D. 365 (S.D.Texas 1964). Plaintiff argues that because Defendant did not recognize section 185(c) as a venue provision and argued it only under the rubric of jurisdiction, that it should not be considered to have raised adequately a venue defense. The Court finds, however, that Defendant, however inartfully, has brought to the Court's attention the possibility that section 185(c) precludes the bringing of this case in this district and that that possibility should be seriously examined. Since Plaintiff did not respond to the 185(c) argument, but asserts generally in a footnote that the case law supports his position that venue is proper in Maine, the Court will permit him to brief the issue. The Court will also order Plaintiff to amend his May 1987 affidavit to state with specificity when the events in paragraph 9 are supposed to have taken place.

### *Personal Jurisdiction*

The record before the Court shows that Defendant's headquarters is in Maryland and that it has no union hall, office, officers, or agents permanently within the state of Maine. The Union does, however, represent members in Maine. These number less than twenty-five, out of a total membership of over twenty thousand. The members resident in Maine conduct some of their business with the Union, whether concerning grievances, insurance claims, or other Union matters, by mail and phone, and the Union conveys information to them in like fashion. Under the Union's constitution there is a vice president in charge of "activities of all the points and personnel thereof on the Atlantic coast," including Maine. The preamble to the constitution notes that its members are migratory.

Under the Maine long-arm jurisdictional statute, 14 M.R.S.A. § 704A, the doing of a number of enumerated acts in, or having an effect on Maine, may subject a defendant to jurisdiction in the state.[1] Included among these acts are contracting to insure any person in the state and contracting to supply services within the state. Although the Union's relationship to its Maine members might be squeezed uncomfortably into one of these two categories, the statute provides a broad residual category which appears more apt: "maintain[ing] any other relationship to persons within the state which affords a basis for the exercise of jurisdiction by the courts consistent with the Constitution." The Union has established an ongoing relationship with Maine residents, as part of which it represents them in labor-management relations. This relationship will make Defend-

1. The Court looks to the state long-arm statute because the service of process provision in the federal labor statute being applied here, 29 U.S. C. § 185, does not deal generally with amenability to service of process within a given district.

ant amendable to suit here as long as due process standards are met.[2]

The Supreme Court has repeatedly emphasized that due process requires that "a defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The Court explained this requirement for cases of specific jurisdiction[3] in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985):

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 [104 S.Ct. 1473, 1478, 79 L.Ed.2d 790] (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities,' *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 [104 S.Ct. 1868, 80 L.Ed.2d 404] (1984).

The Court went on to say that "with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulations and sanctions in the other state for the consequences of their activities." *Id.* 471 U.S. at 473, 105 S.Ct. at 2182 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950).

Here, Plaintiff's injury allegedly results from a breach of Defendant's duty of fair representation, and it is Defendant's representation of its members in Maine which provides the contact with Maine needed for application of the long-arm statute. The question then remains whether Defendant has purposefully directed its activities at residents of the forum. Defendant has tried to paint a picture of itself as operating exclusively outside the forum, asserting that its union halls and offices are outside the state, its collective bargaining agreements are with non-Maine employers, its members do not ship out of or receive payoffs in Maine, and its members' voyages do not originate or terminate in Maine.[4] Affidavit of Angus Campbell, May 6, 1987. Finally, Defendant asserts that "if any member is a resident of the State of Maine, he or she must utilize a Seafarers' Hiring Hall out of State and must also travel out of State to obtain any services from the Seafarers' International Union, Atlantic, Gulf, Lakes and Inland Water District." *Id.*, ¶ 16. Plaintiff disputes this, and letters in the file from Defendant to Plaintiff in Maine concerning both his grievance and his health benefits support his analysis.

■ A union draws its strength in part from its numbers, and a union made up of admittedly migratory workers can expect to have a far-flung membership. By voluntarily agreeing to represent and provide services to its members in Maine, Defendant, while building its strength, created a continuing obligation to them, and a substantial connection with Maine. *See Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474 (9th Cir.1986). The union can be expected to honor its obligation to represent its members in Maine and to provide services, such as health benefits, to them, dealing as they did with Plaintiff by mail or telephone.[5]

---

2. The Maine statute has been construed as providing for jurisdiction to the full extent permitted by the due process clause of the Fourteenth Amendment to the Constitution. *Labbe v. Nissen Corp.*, 404 A.2d 564, 569 (Me.1979).

3. In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 414, 104 S.Ct. at 1872, the Court contrasted specific jurisdiction to general jurisdiction in which "a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum."

4. Plaintiff's affidavit places this fact in dispute, *see* Plaintiff's Affidavit, May 1987, but this does not affect the Court's analysis.

5. Since the Atlantic, Gulf, Lakes, and Water District appears from the Union's constitution to encompass Maine, *see* Article X, Section 5, it seems within reasonable expectation that on-site union activity might take place in Maine in the future.

As the Supreme Court noted, jurisdiction may not be avoided just because the defendant has been physically absent from the forum state:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another state, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. Although Defendant is not a commercial actor in the usual sense, the Court finds the rationale equally applicable in this case.

█ Since the Court has found that Defendant purposefully established minimum contacts in Maine, it must finally determine whether the assertion of jurisdiction would comport with fair play and substantial justice. *See id.* The Court notes that the burden on the Union of defending this action in Maine is slight when one considers that the Union is ready to deal with labor issues in the broad area covered by the Atlantic, Gulf, Lakes and Inland Water District. Moreover, Maine has a significant interest in providing its residents with a forum for reaching defendants who breach important obligations to them. Therefore, notions of fair play are not offended by this Court's assertion of jurisdiction over this Defendant in Maine. This conclusion is not undercut by the fact that Plaintiff is no longer a Maine resident. In *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984), the Supreme Court made explicit that "plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts."

Accordingly, it is ORDERED that Defendant's motion to dismiss on the ground of lack of personal jurisdiction is hereby DENIED. Defendant's motion to dismiss on the ground of improper venue under 29 U.S.C. 185(c) is DEFERRED. Plaintiff may have ten (10) days of the date of receipt of this Order in which to respond to the motion. Plaintiff is also hereby ORDERED to provide the dates of the events asserted in paragraph 9 of Roland Benz's affidavit within ten (10) days of the date of receipt of this Order.